IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VICKI L. JOHNSON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | No.  SA-13-CV-1078-XR |
| | § | |
| TEXAS RIO GRANDE LEGAL AID, INC. | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## ORDER

On this day, the Court considered Defendant's motion for summary judgment (Doc. No. 15.  After careful consideration, the motion is GRANTED.

### Background

Plaintiff filed a pro se petition in the 150th Judicial District Court of Bexar County, Texas on October 25, 2013.  In that petition Plaintiff alleged that on July 14, 2010, she originally filed a charge of discrimination with the Equal Employment Opportunity Commission against TRLA alleging that she was being discriminated against by her employer, TRLA, on the basis of her age and race.  Plaintiff further alleges that she and the TRLA signed a Mediation Settlement Agreement on September 15, 2010.

As a result of that agreement, Plaintiff began work on September 27, 2010, as an attorney in TRLA's Victoria, Texas office.  Thereafter, on November 2, 2011, Plaintiff requested a transfer to TRLA's San Antonio office.  On or about January 17, 2012, Plaintiff filed another charge of discrimination alleging race and age discrimination and retaliation.  Plaintiff was officially transferred to the San Antonio office on September 4, 2012.

Plaintiff alleges that (1) TRLA breached the mediated settlement agreement by discriminating against her because of her race, creating a hostile work environment, and retaliating against her; (2) discriminated against her because of her race; (3) retaliated against her; (4) created and maintained a hostile work environment; and (5) engaged in intentional infliction of emotional distress.[1]

On August 9, 2013, the EEOC issued its notice of right to sue letter.

In her state court petition Plaintiff did not specify in her causes of action whether she was bringing suit under Title VII of the Civil Rights Act or the Texas Labor Code. In her "Attorney's Fees" section (although she is proceeding pro se) she seeks attorney's fees under both the federal and state statutes. On November 26, 2013, TRLA removed this case to this court arguing federal question jurisdiction exists. Plaintiff made no attempt to dismiss her federal claim and seek a remand to state court.

## TRLA's motion for summary judgment

TRLA asserts that Plaintiff's retaliation claims fail because: (1) the delay in approving her transfer from Victoria to San Antonio was not a materially adverse employment action and (2) there is no causal nexus between the alleged protected activity and the delay in approving Plaintiff's transfer. Further, there is no evidence that TRLA's legitimate, non-retaliatory reason for delaying the approval of Plaintiff's request for a transfer was a pretext for illegal retaliation.

With regard to the race discrimination claim, TRLA argues: (1) there is no evidence to support Plaintiff's claim that the delay in approving her job transfer was racially motivated; (2) Plaintiff cannot identify any similarly situated individuals who were treated better or differently than Plaintiff; and (3) there is no evidence that TRLA's legitimate, non-retaliatory reason for

---

[1] Plaintiff does not allege any age discrimination claim in her petition.

2

delaying the approval of Plaintiff's request for a transfer was a pretext for illegal racial discrimination.

TRLA also argues that Plaintiff's claims of hostile work environment are barred because Plaintiff failed to allege such a theory in her second charge of discrimination. Alternatively, TRLA argues that a retaliatory hostile work environment claim is not recognizable under Title VII. Finally, TRLA asserts that Plaintiff cannot raise a fact issue that (1) the alleged harassment was based on a protected characteristic, (2) the harassment affected a term, condition, or privilege of employment, or (3) the employer knew or should have known of the harassment and failed to take prompt remedial action.

With regard to the breach of the mediated settlement agreement, TRLA argues that the delay in approving the job transfer was not a materially adverse employment action, and there was no actionable retaliation, and consequently no breach of the mediated settlement agreement.

Finally, TRLA asserts that Plaintiff's IIED claim fails as a matter of law under Texas law because such a tort is a "gap filler" and Title VII provides the appropriate legal redress.

## Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "[The] court construes 'all facts and inferences in the light most favorable to the nonmoving party.'" *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (*quoting Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)). But "[s]ummary judgment may not be thwarted by

conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Id*.

**Analysis**

**Title VII retaliation claim**

Title VII prohibits retaliation against employees who engage in protected conduct, such as filing a charge of harassment or discrimination. *Perez v. Region 20 Educ. Serv. Ctr*., 307 F.3d 318, 325 (5th Cir. 2002). To make out a prima facie case of retaliation, a plaintiff must demonstrate (1) she engaged in an activity protected by Title VII; (2) the employer took an adverse employment action against the employee; and (3) there is a causal connection between the protected activity and the adverse employment action. *Brazoria Cnty. v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004).

An adverse employment action is one by the employer that "a reasonable employee would have found ... [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 68 (2006). "[N]ormally, petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." Id.

Assuming that the delay in approving the transfer was an adverse employment action, Plaintiff fails to establish a causal connection between her filings of the first and second charges of discrimination and the delay in approving the transfer.

The Executive Director of the TRLA, David G. Hall, submitted an affidavit in support of Defendant's motion.  In summary, Mr. Hall states that he did not immediately approve the transfer request because doing so would have reduced the Victoria, Texas office to one attorney in what should be a three lawyer office.  Mr. Hall stated that he approved Plaintiff's request once

4

he was able to hire two new attorneys to staff the Victoria office.  Further, Mr. Hall stated that transfers of other attorneys in other TRLA offices were able to be approved in a more timely fashion because those transfers did not result in an office being improperly staffed.  In response, Plaintiff states that a material fact issue exists as to each of the elements of her retaliation claim, and without further argument or directing the Court to a specific document, she merely refers the Court to 19 pages of what she terms undisputed facts and 205 exhibits (a total of 419 pages) she has attached to her response.[2]   Plaintiff has tendered nothing but her own speculation and conclusory belief that her transfer request was delayed because of retaliation.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996) (en banc) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.").

**Title VII race discrimination claim**

In order to establish a prima facie claim of racial discrimination under Title VII, a plaintiff must show she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) ... was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir.2007). If a plaintiff makes a prima facie showing of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Id*. at 557. The plaintiff then "bears the ultimate burden of proving that the employer's proffered reason ... is a pretext...." *Id*.  Again, Plaintiff's mere argument that non-Black employees were allowed to transfer to other offices in a

---

[2] Plaintiff attempts in her 19 pages of "undisputed facts" to refer the "undisputed facts" to an exhibit.  But Plaintiff fails in any way to connect her exhibits to any of the claims that she has made and fails to show how the exhibit creates a material fact issue.  Directing the Court's general attention to multiple exhibits attached to a response does not create or demonstrate material fact issues.  "Judges are not like pigs, hunting for truffles buried in the record." *Casna v. City of Loves Park*, 574 F.3d 420, 424 (7th Cir. 2009), quoting and paraphrasing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

more timely manner does not address the employer's argument that it was not willing to staff the Victoria office with only one attorney given the workload concerns in that office.   Again, Plaintiff has tendered nothing but her own speculation and conclusory belief that her race was allegedly a factor in the delay granting her request for a transfer.[3]

### Hostile Work Environment Claim

A hostile work environment claim requires proof of:  (1) membership in a protected group; (2) harassment (3) based on a factor rendered impermissible by Title VII; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment yet failed to address it promptly.  *Hernandez v. Yellow Transp., Inc*., 670 F.3d 644, 654 (5th Cir. 2012).  In her unsworn declaration, Plaintiff states that every day she worked in the TRLA office was "extremely stressful" and she experienced "emotional anxiety."  She states that she felt like she was being "monitored" by the branch manager.  She claims that she "felt" that she was "targeted" because she had earlier filed a charge of discrimination.  She claims that her computer would "freeze" and that she received inadequate assistance from the computer technology staff.  She claims that a second hard drive was installed on her computer, but that a non-Black attorney did not have a second hard drive installed on her computer.[4]  She complains that a telephone in her temporary San Antonio office was removed and provided to non-attorney staff and that she felt humiliated by this.  Again, Plaintiff provides nothing other than her subjective belief and conclusory remarks that she was harassed because of her previous filing of a charge of discrimination or because of her race.  Mr. Orlando Gutierrez, TRLA's Technology Specialist, stated in his affidavit that technology issues are faced at times by everyone in their non-profit office and that he moved the telephone because

---

[3] Plaintiff has also tendered nothing but her own speculation and conclusory belief that her race was allegedly a factor in any of the computer or phone issues she experienced as discussed below.
[4] Plaintiff seems to suggest that "spyware" was planted on her computer by her employer to "monitor" her.

there was a limited number of data ports at the San Antonio office, there was a large number of interns working regularly at the office, and at that time Ms. Johnson was only working on an interim basis in San Antonio.  Plaintiff fails to establish that she was harassed because of her previous filing of a charge or because of her race, or that the above acts constituted harassment that affected her work.[5]

**Breach of the mediated settlement claim**

The Fifth Circuit has held that federal law governs settlement agreements in employment discrimination actions brought pursuant to Title VII. *Fulgence c. McDermott*, 662 F.2d 1207, 1209 (5th Cir. 1981). Such agreements are construed according to the federal common law of contracts derived from general principles of contract. *Kessell v. Mega Life & Health Ins*., 2005 WL 383700 *3 (N.D. Tex. 2005).[6]  Inasmuch as this Court has found as a matter of law that TRLA did not discriminate or retaliate against Plaintiff in any manner, Plaintiff fails to establish that Defendant breached the mediated settlement agreement.

**IIED Claim**

In *Hoffmann–LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004), the Texas Supreme Court stated that the tort of intentional infliction of emotional distress is a "gap-filler" tort that should not be extended to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines.  *Hoffmann–LaRoche*, 144 S.W.3d at 447.

Even if the "gap filler" basis for precluding relief under an intentional infliction claim was not present, Plaintiff's claim fails on the second basis identified in *Hoffmann–LaRoche*.  To recover damages for IIED, a plaintiff must establish that: (1) the defendant acted intentionally or

---

[5] To the extent that Plaintiff brings any claims under the Texas Labor Code for discrimination or retaliation, the above analysis is similar and accordingly summary judgment is granted in favor of the Defendant and against Plaintiff on any of these state law claims.  *Williams v. Merck & Co., Inc*., 381 F. App'x. 438 (5th Cir. June 16, 2010).

[6] The same result would be reached here if Texas state law was applied.  *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741 (Tex. App. - El Paso 2000, no pet.) (breach a necessary element).

recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993).  Liability does not extend to insults, indignities, threats, annoyances, or petty oppressions. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999).  It is for the court to determine, in the first instance, whether a defendant's conduct was "extreme and outrageous." *GTE Sw, Inc*., 998 S.W.2d at 616.  The facts that Plaintiff alleges, taken in the light most favorable to her, do not as a matter of law rise to the level of extreme or outrageous conduct. In *Hoffmann–LaRoche*, the court emphasized that an intentional infliction of emotional distress claim does not arise from most employment disputes, but instead can exist in only the most unusual of circumstances. In that sexual harassment case, allegations and evidence of vulgar joke-telling, verbal abuse, unfair evaluations, and unfair and discriminatory job termination, did not, as a matter of law, rise to the level of extreme or outrageous conduct. 144 S.W.3d at 448-49; *see also Benners v. Blanks Color Imaging, Inc*., 133 S.W.3d 364, 373 (Tex. App.—Dallas 2004, no pet.) ("In the workplace, to properly manage its business, an employer must be able to supervise, review, criticize, demote, transfer and discipline employees. Although many of these acts are necessarily unpleasant for the employee, an employer must have latitude to exercise these rights in a permissible way, even though emotional distress results. Thus, a claim for intentional infliction of emotional distress does not lie for an ordinary employment dispute.").

**Conclusion**

Defendant's motion for summary judgment (docket no. 15) is GRANTED.[7]  Defendant's motion to strike various portions of Plaintiff's Response (docket no. 19) is DISMISSED as moot. The Clerk is directed to close this case and to enter judgment that Plaintiff take nothing by her claims and that her claims are dismissed on the merits.  Defendant is awarded its costs of court and shall file a Bill of Costs pursuant to Local Rule CV-54.

SIGNED this 9th day of October, 2014.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[7] Any objections to Defendant's motion for summary judgment stated in Plaintiff's Response (docket no. 16) are overruled.